UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 17-20360
    HON. AVERN COHN

DELANTAE COLLINS,

    Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO SUPPRESS (Doc. 20)

**1.**

This is a felon in possession case. Defendant has filed a Motion to Suppress Physical Evidence and for An Evidentiary Hearing (Doc. 20), the government has responded (Doc. 24), the parties filed supplemental briefs (Doc. 34 and Doc. 36), and hearings were held on December 14, 2017 and February 23, 2018. For the reasons that follow, defendant's motion is DENIED.

**2.**

Two (2) Detroit police officers (Officer No. 1 and Officer No. 2) walked into a Detroit gas station around 10:00 p.m. one night in a high crime area. They encountered four (4) men talking to each other. Three of the men, including defendant, were smoking cigarettes, a civil ordinance offense.

As established by the testimony at the evidentiary hearings on the motion, and as described in the government's brief, the facts follow:

- The two (2) officers entered the lobby of the gas station. When they entered, defendant and his companions immediately stopped laughing and joking with each other and became silent and serious;
- The two (2) officers saw defendant move off the ice cream freezer he was sitting on and blade the right side of his body away from them as he did so;
- Officer No. 2 saw an L-shaped bulge on defendant's right side that appeared to be a hand gun;
- Officer No. 1 began talking to defendant. Defendant had a panicked look on his face, locked eyes with his friend, and did not respond to the officer;
- Officer No. 1 became concerned about defendant's lack of response. As a result, Officer No. 1 went to grab defendant's hand to detain him;
- As Officer No. 1 attempted to detain defendant, defendant clenched his fist and stiffened his body;
- Defendant pushed off of Officer No. 1 and started toward the door of the gas station;
- Officer No. 1 caught defendant by the belt;
- Officer No. 2 began helping Officer No. 1 to detain defendant;
- Defendant reached toward the gun side of Officer No. 2's utility belt;
- Defendant continued his efforts to get out of the gas station, pushing away from Officer No. 1 and Officer No. 2 as the group spilled out of the gas station;
- The two (2) officers saw defendant reach his right hand into his waistband to retrieve a firearm he was carrying and move it forward;
- Defendant's gun was pointed toward Officer No. 1's knee or ankle;

2

- Defendant was eventually subdued and the firearm was picked up by the officers.

**3.**

"To have probable cause for an arrest, the police must be aware of 'facts and circumstances' sufficient to allow a prudent person to think the arrestee has committed or is about to commit a crime." United States v. Price, 841 F.3d 703, 706 (6th Cir. 2016) (quoting Radvansky v. City of Olmsted Falls, 496 F.3d 609, 614 (6th Cir. 2007)). "On the other hand, a short investigatory detention, rather than an arrest, requires only 'reasonable suspicion of criminal activity.'" Sutton v. Metro. Gov't of Nashville & Davidson Cty., 700 F.3d 865, 872 (6th Cir. 2012) (quoting United States v. Lopez–Medina, 461 F.3d 724, 739 (6th Cir. 2006). Reasonable suspicion must be supported by "specific and articulable facts." United States v. Beauchamp, 659 F.3d 560, 569 (6th Cir. 2011).

**4.**

Collins says that he was detained the moment Officer No. 1 grabbed his arm inside the gas station, because at that point he would not have felt free to leave. See United States v. Mendenhall, 446 U.S. 544, 554 (1980). Collins says that a civil infraction (in this case, smoking inside a gas station) did not justify an arrest, and that the officers did not have reasonable suspicion to detain him.

Collins cites United States v. Beauchamp, 659 F.3d 560 (6th Cir. 2011), in which the Sixth Circuit held that police officers had no reasonable suspicion when a defendant was in a "high-drug complaint location" very late at night with another person, and then "hurriedly walk[ed] away from an officer without making eye contact." Id. at 570. The court there stated that "it is clear that walking away from an officer does not create such

a reasonable suspicion" Id. Collins also asks the Court to follow the dissent in United States v. Brown, 310 F. App'x 776, 781–82 (6th Cir. 2009) (Clay, J., dissenting). The dissenting judge disagreed that there was reasonable suspicion as a result of

> Brown's loitering in the parking lot; the time of night (after 8pm); the fact that she [the arresting officer] had made numerous arrests in that same parking lot; Brown's failure to respond to or make eye contact with her; Brown's attempting simply to walk away rather than respond; and Brown's placing his hand over his back-right pocket as he walked away.

Id. Finally, Collins emphasizes that he did not assault Officer No. 1 in any way, but was forced to "push past" him in order to leave through the only available exit.

**5.**

In response, the Government says that there was no seizure until the end of the incident because Collins did not submit to police authority until that point. See California v. Hodari D, 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not."); United States v. Jones, 562 F.3d 768, 774 (6th Cir. 2009) ("Without actual submission, 'there is at most an attempted seizure'") (quoting Brendlin v. California, 551 U.S. 249, 254 (2007)); see also United States v. Jeter, 721 F.3d 746, 752 (6th Cir. 2013) ("in order to be seized, the suspect must also *submit* to the authority of the officers") (emphasis in original).

To establish that the sequence of actions that ended in the seizure is legitimate, the Government says first that police may detain individuals who have committed a civil infraction. See United States v. Torres-Ramos, 536 F.3d 542, 550 (6th Cir. 2008) (holding that police may stop and investigate an individual with probable cause of a civil

4

traffic violation); Michigan v. DeFillippo, 443 U.S. 31, 39-40 (1979) (holding that, pursuant to Michigan's general arrest statute, an officer can seize a person when he has probable cause that the person violated a city ordinance); Mich. Comp. Laws §§ 333.12601 *et seq.* (providing that smoking inside places of employment is a civil infraction).

Second, the Government says that the officers had reasonable suspicion to detain Collins even if he did not commit a civil infraction. The Government cites United States v. Smith, 594 F.3d 530, 539 (6th Cir. 2010) (allowing the defendant's attempt to "push past the officers and exit the building" to contribute to a finding of reasonable suspicion); United States v. Russ, 508 F. App'x 377, 382 (6th Cir. 2012) (allowing the defendant's "physical contact with and flight from" the arresting officer to contribute to a finding of reasonable suspicion); and United States v. Mason, 550 F. Supp. 2d 309, 317 (E.D.N.Y. 2008) (allowing the fact that the defendant "pushed Officer Porras and attempted to flee" to contribute to a finding of probable cause).

**6.**

The cases cited by the Government make clear that a seizure does not take place until the seized person submits to an officer's authority. The cases cited by Collins fail to rebut this proposition. Seizure did not occur until Collins was securely detained outside the gas station. The facts described on p. 2 above regarding what the officers knew at that point are sufficient to justify Collins' detention. Collins makes much of the point that merely refusing to answer police officer questions or walking away from police officers does not create reasonable suspicion. However, here that happened along with a host of suspicious circumstances which prompted the actions taken by the officers.

5

See Fla. v. Royer, 460 U.S. 491, 498 (1983) ("his refusal to listen or answer does not, *without more*, furnish those grounds.") (emphasis added); United States v. Beauchamp, 659 F.3d 560, 570 (6th Cir. 2011) ("In those cases in which we have found that walking away from police does contribute to reasonable suspicion, specific facts have shown that the defendant's behavior was *otherwise suspicious*") (emphasis added).

**7.**

Collins did not just "walk away" from the officers, but instead pushed Officer No. 1 aside in the course of trying "to run out the door." Pushing away and quickly fleeing from an officer distinguishes what happened here from Brown and Beauchamp. Such actions have been recognized as a legitimate source of reasonable suspicion. See Smith, 594 F.3d at 539; Russ, 508 F. App'x at 382; Mason, 550 F. Supp. 2d at 317; Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); United States v. Turner, No. 02-20161 MlV, 2003 WL 21946471, at *3 (W.D. Tenn. June 30, 2003) ("Turner's hand in his pocket, the push of Officer Herring, Turner's jumping off the balcony, and Turner's flight, all combined under the totality of the circumstances to give Officer Herring reasonable, articulable suspicion that criminal activity was afoot.").

**8.**

Even if the officers did not have reasonable suspicion that Collins had committed a crime, they still had probable cause to seize him for violating the ordinance that prohibited smoking inside gas stations. DeFillippo, 443 U.S. at 39-40; Mich. Comp.

Laws § 764.15 ("A peace officer, without a warrant, may arrest a person . . . [when a] felony, misdemeanor, or ordinance violation is committed in the peace officer's presence.").

Accordingly, defendant's motion to suppress is denied.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: March 29, 2018
Detroit, Michigan