UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                   Case Number 17-20360

v.                                     Honorable David M. Lawson


DELANTE COLLINS,

                Defendant.

_____/

**OPINION AND ORDER DENYING SECOND MOTION
FOR REDUCTION OF SENTENCE AND DENYING AS MOOT SECOND
MOTION FOR HEARING ON REQUEST FOR COMPASSIONATE RELEASE**

Defendant Delantae Collins has filed a second motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2).  On May 7, 2020, the Court issued an opinion and order denying Collin's first motion for compassionate release after it found that he had not established that he had any sufficiently serious medical risk factors to warrant immediate release.  On June 16, 2020, the Court denied his motion for reconsideration, finding that cumulative medical information that had been presented still did not establish a sufficiently extraordinary and compelling medical risk, and for the additional reason that the defendant had not exhausted available administrative avenues for seeking release.  However, the Court did grant the defendant's request for a non-binding judicial recommendation that he be considered for placement in home confinement.  That recommendation apparently did not persuade the Bureau of Prisons, and on December 7, 2020 the

defendant filed a second motion for compassionate release. With his second motion, Collins presents new evaluations by his physician. However, he still has not demonstrated that the present facts and circumstances amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires. Because Collins has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

On May 30, 2017, Collins was charged in a single-count indictment with possessing a firearm after having been convicted of a felony, contrary to 18 U.S.C. § 922(g)(1). The defendant pleaded guilty, and on October 2, 2018, the Honorable Avern Cohn sentenced him to 60 months in prison to be followed by two years of supervised release. He presently is confined by the Bureau of Prisons (BOP) at FCI Elkton, in Lisbon, Ohio, which is a low security facility that houses around 1,390 inmates. Collins is 28 years old. He has served approximately 25 months of his custodial sentence. Public records of the BOP indicate that the defendant is scheduled to be released from prison on May 16, 2023.

As noted, the defendant previously filed a motion for compassionate release, which was denied. He filed a motion for reconsideration, which also was denied. His second motion for compassionate release was filed through counsel on December 7, 2020. The government has filed a response and the defendant filed a reply in support of his motion.

The most recent data disclosed by the BOP indicates that there are three active coronavirus cases among inmates and 30 among staff at the Elkton facility, although 855 inmates and 56 staff previously were diagnosed and now have recovered. Reports indicate that nine inmates have died. *See* https://www.bop.gov/coronavirus/. The BOP also recently began reporting data on the number

of COVID-19 vaccinations that it has administered to staff and inmates.  At Elkton, the reports

indicate that 175 staff and 21 inmates fully have been vaccinated.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has

been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. §

3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate

release."  *Ibid.*  "The request may come through a motion in federal court filed by the Director of

the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the

inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt

of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'"  *Ibid.* (quoting

18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors

set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and

compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has

'served at least 30 years,' and meets certain other conditions."  *Ibid.* (quoting 18 U.S.C. §

3582(c)(1)(A)(i), (ii)).  Collins again relies on subparagraph (i) of the statute.  Under that provision,

the Court can order a reduction of a sentence, even to time served, by following a procedure that

the court of appeals has distilled into three steps.  *First*, consider whether "extraordinary and

compelling reasons warrant such a reduction."  *Second*, determine if the "reduction is consistent

with applicable policy statements issued by the Sentencing Commission."  *Third*, "consider[] the

factors set forth in section 3553(a) to the extent that they are applicable."  *United States v. Ruffin*,

978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

-3-

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute.  The commentary adds gloss, which does not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").  That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP.  *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further.  In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'"  984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)).  It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."  *Id.* at 519-20.  It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative."  *Ibid.*

A.

The government concedes that Collins's second the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Collins contends that he has several medical conditions that subject him to an elevated risk of complications from the highly-contagious novel coronavirus. First, he offers a new evaluation by a physician who reviewed the defendant's medical records and opined that Collins has "moderate persistent asthma." However, that doctor did not examine Collins personally. Medical Report of Dr. James Pearle dated Nov. 25, 2020, ECF No. 113, PageID.751. Second, the defendant points out that he was prescribed a Mometasone Furonate inhaler for his asthma since September 30, 2020. Medical Notes dated Oct. 27, 2020, ECF No. 118, PageID.812. Third, he points to prison medical records indicating that since late October 2020 he was diagnosed with shingles and given Ibuprofen for headaches. *Id.* at PageID.808. Fourth, Collins asserts that he is 5'10" tall and that his weight recently was indicated as 210 pounds on a scale located in the prison recreation room. He asserts that this corresponds to a body mass index (BMI) of 30.1, slightly above the obesity threshold that is recognized by the CDC as comprising a risk factor for coronavirus infection. Finally, Collins points to medical notes indicating blood pressure readings ranging from "elevated" to "stage 2 hypertension" over the past year. However, his records do not indicate that he has been medically diagnosed with any form of hypertension or that he presently takes any medication for his blood pressure.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6. And

the defendant is justifiably concerned about the health risks posed by his incarceration.  "The

COVID-19 virus is highly infectious and can be transmitted easily from person to person.  COVID-

19 fatality rates increase with age and underlying health conditions such as cardiovascular disease,

respiratory disease, diabetes, and immune compromise.  If contracted, COVID-19 can cause severe

complications and death. . . .  [T]he Centers for Disease Control and Prevention ("CDC")

recommends preventative measures to decrease transmission such as physical distancing, mask

wearing, and increasing focus on personal hygiene such as additional hand washing."  *Wilson v.

Williams*, 961 F.3d 829, 833 (6th Cir. 2020).  "The COVID-19 pandemic is extraordinary and

unprecedented in modern times in this nation.  It presents a clear and present danger to free society

for reasons that need no elaboration."  *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at

*2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the

COVID-19 contagion, once it gains entry, will spread.  And, realistically, a high-risk inmate who

contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in

the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held

in pretrial or presentencing custody and, in more limited instances, the compassionate release of

high-risk inmates serving federal sentences."  *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical

conditions face an increased risk of severe consequences from potential COVID-19 infection.

*United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk

factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease;

obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease

2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control &

Prevention (June 25, 2020), https://bit.ly/2WBcB16).  It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist.  *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, now list both moderate persistent asthma and hypertension as conditions that "*might*" elevate a person's risk for serious consequences from a coronavirus infection.  Obesity, which is defined as having a BMI greater than 30, still appears on the list of conditions for persons who "*are* at increased risk."  *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 17, 2021) (emphases added).  But even if the Court accepts at face value the defendant's assertions that he presently suffers from "moderate persistent asthma," and that he has some form of "hypertension," those conditions have been downgraded by the CDC from recognized certain risk factors to conditions that "might" put a person at elevated risk.  Moreover, this and other federal courts have noted that only the more specific diagnosis of "pulmonary hypertension" is among the recognized serious risk factors, in contrast with the more prevalent condition of "systemic hypertension."  Nothing in the defendant's medical records suggests that he has been diagnosed with pulmonary hypertension.  *United States v. Blewett*, No. 06-20585, 2021 WL 289552, at *4 (E.D. Mich. Jan. 28, 2021).  The presently available CDC guidance does not suggest that either "shingles" or "headaches" create any elevated risk for persons infected with the coronavirus.

The defendant's "obesity" at present is only barely above the 30.0 threshold, at 30.1.  However, a BMI in excess of 30 still is recognized by the CDC as a serious medical risk factor,

and federal courts regularly have held that obesity poses a sufficient medical risk to establish extraordinary circumstances weighing in favor of release, at least where the inmate is confined at a facility with an active outbreak. *See United States v. Olawoye*, No. 15-00172, 2020 WL 4559816, at *4 (D. Or. Aug. 7, 2020).   Nevertheless, federal courts ruling recently on motions for compassionate release have held that inmates with only one (or even several) recognized medical risk factors had not sufficiently shown extraordinary and compelling circumstances warranting immediate release from custody.  *United States v. Ishmael*, No. 12-155, 2021 WL 567747, at *6 (E.D. Pa. Feb. 16, 2021) (collecting cases holding that obesity, hypertension, diabetes, and various combinations of the same did not establish extraordinary and compelling medical risk).  Here, the defendant has demonstrated, at most, that he faces a certainty of risk from only one recognized risk factor, which is a BMI barely above the 30.0 obesity threshold.

Moreover, another pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be minimal. Recent reports indicate that the probability of infection at Elkton, although once quite high, now is very low, with only three active cases among inmates.  Further, even as the incidence of infection at Elkton dramatically has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid deployment of newly available vaccines, which so far have been administered fully to 175 staff and 21 inmates Elkton.  The likelihood of a severe outbreak only further will diminish as the vaccination program proceeds.  The available medical records do not indicate that Collins has himself been vaccinated, but federal courts recently have held that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk.  *United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases).

The defendant has only one acknowledged certain risk factor (obesity).  Considering the current few of active cases among inmates at his facility, as well as the ongoing vaccination program at Elkton, the defendant has not sufficiently established that he presently faces an extraordinary and compelling medical risk that warrants his release.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors.

III.

Collins has exhausted his administrative remedies.  However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's second motion for compassionate release (ECF No. 113) is **DENIED**.  The defendant's second motion for a hearing on his request for compassionate release (ECF No. 123) is **DENIED** as moot.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 8, 2021