UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELANTAE COLLINS,

        Petitioner,        Case Number 17-20360
v.        Civil Case Number 21-11640
        Honorable David M. Lawson

UNITED STATES OF AMERICA,

        Respondent.
_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Defendant Delantae Collins challenges his conviction and sentence for possessing a firearm as a convicted felon, a charge to which he pleaded guilty in May 2018. He argues that his trial and appellate lawyers were ineffective in several ways, the government improperly suppressed material exculpatory evidence, and that he is "actually innocent" of the crime and his conviction was unsound under the holding of *Rehaif v. United States*, 588 U.S. 225 (2019), which held that in order to secure a conviction the government must prove that the defendant knew that he was prohibited from possessing a firearm. Several of these claims could have been raised on direct appeal and are not reviewable now, and the rest lack merit. The motion will be denied.

I.

The prosecution stemmed from a street encounter in a gas station in Detroit when police officers, acting on reasonable suspicion, detained Collins and found that he possessed a handgun. Collins moved to suppress the evidence, and Judge Avern Cohn held an evidentiary hearing on the motion. Judge Cohn summarized the hearing testimony as follows:

> Two (2) Detroit police officers (Officer No. 1 and Officer No. 2) walked into a Detroit gas station around 10:00 p.m. one night in a high crime area. They encountered four (4) men talking to each other. Three of the men, including defendant, were smoking cigarettes, a civil ordinance offense. As established by the testimony at the evidentiary hearings on the motion, and as described in the

>government's brief, the facts follow: The two (2) officers entered the lobby of the gas station.  When they entered, defendant and his companions immediately stopped laughing and joking with each other and became silent and serious.  The two (2) officers saw defendant move off the ice cream freezer he was sitting on and blade the right side of his body away from them as he did so.  Officer No. 2 saw an L-shaped bulge on defendant's right side that appeared to be a handgun.  Officer No. 1 began talking to defendant.  Defendant had a panicked look on his face, locked eyes with his friend, and did not respond to the officer.  Officer No. 1 became concerned about defendant's lack of response.  As a result, Officer No. 1 went to grab defendant's hand to detain him.  As Officer No. 1 attempted to detain defendant, defendant clenched his fist and stiffened his body.  Defendant pushed off of Officer No. 1 and started toward the door of the gas station.  Officer No. 1 caught defendant by the belt.  Officer No. 2 began helping Officer No. 1 to detain defendant.  Defendant reached toward the gun side of Officer No. 2's utility belt.  Defendant continued his efforts to get out of the gas station, pushing away from Officer No. 1 and Officer No. 2 as the group spilled out of the gas station.  The two officers saw defendant reach his right hand into his waistband to retrieve a firearm he was carrying and move it forward.  Defendant's gun was pointed toward Officer No. 1's knee or ankle.  Defendant was eventually subdued and the firearm was picked up by the officers.

Op. Denying Mot to Suppress, ECF No. 40, PageID.226-28.

On May 30, 2017, Collins was indicted for possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).  On September 26, 2017, he filed his motion to suppress evidence of the firearm retrieved at the scene of the gas station encounter, arguing that the officers had no reasonable suspicion to justify a temporary detention or search of his person.  The briefing schedule was enlarged to allow the filing of supplemental briefs.  Eventually a hearing was held, and on March 29, 2018, Judge Cohn issued an opinion denying the motion, after concluding that (1) the defendant was not "seized" within the meaning of the Fourth Amendment until the moment when he was subdued physically by officers outside the store premises, because prior to that moment he had not submitted to the authority of the officers to detain him, (2) the officers had reasonable suspicion to justify a temporary detention based on the defendant's furtive behavior, and attempts to evade the officers' scrutiny upon their initial approach, along with the sight of a suspected weapon on his person, and (3) even if reasonable

suspicion for a stop-and-frisk search was lacking at the outset of the encounter, the officers had probable cause for an arrest of the defendant because they witnessed him committing a civil infraction. On May 29, 2018, the defendant pleaded guilty as charged without a plea agreement with the government. Judge Cohn sentenced him to 60 months in prison.

The defendant and the government filed cross-appeals. However, the government's appeal voluntarily was dismissed by stipulation of the parties. The defendant raised two issues on appeal, arguing that the district court erred by denying his motion to suppress and that there were procedural and substantive defects in the sentence proceeding. On January 7, 2020, the Sixth Circuit issued an opinion affirming the conviction and sentence, after concluding that the claim of error relating to the denial of the motion to suppress was foreclosed by the defendant's guilty plea, and there was no error in the determination of the sentence.

On February 2, 2020, the defendant filed a *pro se* motion to "reverse or vacate" his conviction or for a "new trial." The case subsequently was reassigned to this Court due to Judge Cohn's retirement. New counsel appeared for the defendant shortly after and filed a motion for compassionate release on the ground that the then-ongoing COVID-19 pandemic posed serious risks to the defendant's health in the institutional setting. The *pro se* motion to vacate the conviction then was withdrawn by the defendant's attorney. On May 7, 2020, after receiving supplemental briefing, the Court issued an opinion granting in part the defendant's motion for compassionate release, denying the defendant's request for immediate release, and issuing a recommendation that the Bureau of Prisons should transfer the defendant to a halfway house to serve the balance of his sentence. Public records maintained by the BOP indicate that the defendant was released from custody on May 19, 2023.

On July 1, 2021, Collins filed a *pro se* motion to vacate his conviction and sentence under 28 U.S.C. § 2255 asserting several claims. The motion was supplemented. The following grounds for relief are presented: (1) Collins's trial attorney provided ineffective assistance by failing to secure a conditional plea allowing him to appeal his Fourth Amendment claim; (2) the guilty plea was improperly accepted because, under *Rehaif v. United States* the government was required to prove that the petitioner knew that he was prohibited from possessing a firearm; (3) the petitioner is "actually innocent" of being a felon in possession because he has filed petitions to set aside his two prior felonies; (4) trial counsel was ineffective in his preparation and presentation of oral argument on the motion to suppress by (a) failing to investigate evidence relating to a surveillance video recording and DNA, (b) failing to interview a witness who could have testified at the suppression hearing, (c) failing to challenge the failure by arresting officers to retain and preserve evidence, (d) failing to impeach witnesses based on purportedly inconsistent statements, and (e) failing to conduct adequate legal research and make arguments based on *California v. Hodari D.*, 499 U.S. 621 (1991), in which the Supreme Court held that a person is not "seized" within the meaning of the Fourth Amendment while fleeing from police, if officers have not physically restrained him and he has not "submitted" to an attempted apprehension; (5) trial counsel was further ineffective by failing to object to a sentencing enhancement for presence of a "high capacity magazine" (16 rounds in the magazine plus one in the firing chamber) in the weapon possessed, (6) the government failed to disclose potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (7) appellate counsel was ineffective by (a) failing to challenge the high capacity magazine enhancement, (b) failing to raise a *Brady* issue, and (3) failing to "properly present" arguments challenging the "official victim" sentence enhancement. Mot., ECF No. 127, PageID.890-906.

The government opposes the motion on several grounds.

## II.

It is well accepted that a federal defendant challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). And he "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). Moreover, when a defendant fails to raise an issue at trial or on direct appeal, that issue is generally forfeited. *See Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013).

### A.  Freestanding Claims of Error

Collins raised several free-standing claims of error that are not tethered to any claim of ineffective assistance. He contends that (1) the guilty plea was improperly taken because the government was not required to establish that the defendant knew he was a person prohibited from owning a firearm, (2) he is "actually innocent" of the crime for which he was convicted, based on

the *Rehaif* defect, and (3) the government suppressed potentially exculpatory evidence. Those claims are forfeited because they could have been raised on direct appeal but were not, and a claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley*, 523 U.S. at 621; *Huff*, 734 F.3d at 605-06.

Moreover, contrary to the defendant's position, the Sixth Circuit has rejected the argument that defects relating to *Rehaif*'s knowledge element constitute structural error. *See United States v. Watson*, 820 F. App'x 397, 400 (6th Cir. 2020) ("In *United States v. Hobbs*, 953 F.3d 853 (6th Cir. 2020), [] we held that a defendant who pleads guilty must show prejudice from a district court's failure to explain *Rehaif*'s knowledge-of-status element. We nowhere suggested that such a failure could qualify as structural error. Watson's argument is incompatible with *Hobbs*.") (citing *Ruelas v. Wolfenbarger*, 580 F.3d 403, 410-11 (6th Cir. 2009); *United States v. Stewart*, 306 F.3d 295, 318-23 (6th Cir. 2002)).

Furthermore, even if that controlling precedent did not preclude the *Rehaif* claims, the record does not support the argument because the petitioner admitted during the plea hearing that he knew he was a prohibited person:

> THE COURT: Okay. You had a prior felony conviction?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And, because of it, you weren't supposed to have a gun?
>
> THE DEFENDANT: Yes, Your Honor.

Plea Hr'g, ECF No. 82, PageID.406-07. That admission defeats the petitioner's claim that he was prejudiced by any failure to charge or inform him further about the knowledge element of the crime. *See Brown v. United States*, No. 20-3632, 2021 WL 2470311, at *3 (6th Cir. May 21, 2021) ("In light of Brown's plea agreement admission regarding his prior felony convictions and the fact that he had served more than one year in prison for two of those convictions, it is wholly

implausible that Brown did not know that he was a person who had 'been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year,' 18 U.S.C. § 922(g)(1), and that he would have risked going to trial on the belief that the government would be unable to prove the knowledge-of-status element.").

Collins is not entitled to relief on his freestanding claims.

B. Ineffective Assistance of Counsel Claims

Collins also contends that his attorneys were constitutionally ineffective in the several ways recited above. A claim that would otherwise be forfeited may be raised through a collateral attack under section 2255 if a defendant "can demonstrate cause and prejudice to excuse his default." *Huff*, 734 F.3d at 606. "Ineffective assistance of counsel can constitute cause for a procedural default." *Ibid.* Furthermore, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). And a claim of ineffective assistance of counsel itself is properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

To succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). One way of establishing deficient performance is to show that defense counsel missed a meritorious argument under the controlling law. However, the failure to file a meritless motion or raise a groundless objection does not constitute deficient performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (stating

that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123 (noting that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In a federal habeas proceeding, when the Court weighs a claim of ineffective assistance, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief" on his claim. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Ibid.* However, "[a] petitioner's mere assertion of his innocence, without more, does not entitle him to an evidentiary hearing." *Ibid.*

The reasons why trial counsel may have certain decisions, such as deciding whether or not to pursue certain witnesses to testify at an evidentiary hearing, are not fully illuminated by the record, and if there is room for any factual debate about the circumstances attending the representation, an evidentiary hearing typically is required to crystallize the record. *Ibid.* However, an evidentiary hearing is not required where the record "conclusively shows that the petitioner is entitled to no relief" on his claim. *Ibid.* Here, the record establishes conclusively that the claims of ineffective assistance are without merit.

To succeed on an ineffective assistance claim in the context of a guilty plea, the petitioner "must point to evidence showing a 'reasonable probability' that, but for his counsel's error, he wouldn't have pled guilty and instead would have gone to trial." *United States v. Singh*, 95 F.4th 1028, 1033-34 (6th Cir. 2024). "This test has several components. [First, the petitioner] must demonstrate that going to trial 'would have been rational' under the circumstances of his case. That inquiry is objective, not subjective. Next, [he] must point to evidence contemporaneous with his plea showing it's reasonably likely he would have taken that route. Only in 'unusual circumstances' will a defendant who conceded guilt at the plea stage be able to meet this 'high bar.'" *Ibid.* (citing *Lee v. United States*, 582 U.S. 357, 369-70 (2017); *Kimbrough v. United States*, 71 F.4th 468, 473 (6th Cir. 2023); *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012)).

1. Failure to Negotiate a Conditional Plea (Ground 1)

In his first ground for relief, Collins argues that his trial counsel was ineffective by failing to negotiate a conditional plea that would have allowed him to challenge the denial of his motion to suppress on appeal. When presenting such a claim, the petitioner "can show prejudice by establishing that, but for counsel's advice, it's reasonably probable they would've rejected the government's plea offer and successfully negotiated a better one." *United States v. Singh*, 95 F.4th 1028, 1034 (6th Cir. 2024). However, this "is a difficult standard to meet," because "[a]t a minimum, [the petitioner] must show, based on contemporaneous evidence, that it's reasonably probable he would've rejected the plea offer, the government would've offered a better one, he would've accepted that offer, and the trial court would've approved the deal." *Ibid.* Collins's claim here founders on the second prong, because he has not offered any factual basis to rebut the government's uncontested assertions that it rejected the petitioner's solicitations of a conditional plea, it never made any plea offer including a conditional reservation of the right to challenge the suppression ruling, and it would not have made such an offer under any conditions. Collins has

not identified any evidence suggesting that any additional efforts by his attorney would have resulted in a "better offer" from the government, and he therefore cannot establish that he was prejudiced by any lack of further effort in the negotiations.

Moreover, for reasons discussed below, this claim further is undercut by the fact that Collins has not identified any meritorious Fourth Amendment argument that might have been pursued on appeal and that was not raised by his appellate counsel. *See Yearby v. Klee*, No. 17-1662, 2017 WL 9532628, at *2 (6th Cir. Dec. 11, 2017) ("Yearby has not shown that counsel's failure to seek a conditional plea deal was unreasonable, particularly given counsel's lack of success in raising a speedy-trial claim before the trial court.") (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)).

## 2. Performance at Motion Hearing (Ground 4)

In his fourth ground for relief, Collins contends that his trial counsel performed ineffectively at the hearing on the motion to suppress by (1) failing to investigate evidence relating to surveillance video footage and DNA, (2) failing to interview a witness who could have testified at the suppression hearing, (3) failing to challenge the failure by arresting officers to retain and preserve evidence, (4) failing to impeach witnesses based on purportedly inconsistent statements, and (5) failing to conduct adequate legal research and make arguments based on *California v. Hodari D*, 499 U.S. 621 (1991), in which the Supreme Court held that a person is not "seized" within the meaning of the Fourth Amendment while fleeing from police, if officers have not physically restrained him and he has not "submitted" to an attempted apprehension.

It is well settled that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Rayner v. Mills*, 685 F.3d 631, 640 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 691). But when evaluating counsel's decisions whether to investigate, a court must "apply[] a heavy measure of deference to counsel's

judgments." *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (citing *Strickland*, 466 U.S. at 690-91). When the petitioner predicates an ineffective-assistance-of-counsel claim on a failure to call a witness, he must provide the substance of the missing witnesses' potential testimony. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). And, if he fails to do so, then the petitioner cannot establish that his attorney performed deficiently or that he was actually prejudiced. *Ibid.* (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006)).

In support of his arguments that video footage was not obtained, and that such evidence was "suppressed" by the government, Collins relies solely on an affidavit executed by Keith Weathersby, who attested that he was present with Collins during the store encounter, and that "nobody was smoking" and "nobody had a gun." Keith Weathersby aff., ECN 127, PageID.915. Collins postulates that video evidence would corroborate Weathersby's testimony and support his claims that the seizure was not supported by reasonable suspicion.

Collins conspicuously does not present any affidavit testimony or any other evidentiary basis for his claim that he improperly was seized by police, other than the affidavit by Weathersby and the supposed corroboration by a premises video record. In particular, he offers no evidentiary rebuttal to Judge Cohn's other factual findings, all of which were based on evidence received during the suppression hearing, that (1) as officers first approached the defendant and his companions in the store, they immediately stopped laughing and joking with each other and became silent and serious, (2) the defendant "moved off of the ice cream freezer he was sitting on" and "blade[d] the right side of his body away from" the officers, (2) Officer No. 2 "saw an L-shaped bulge on defendant's right side that appeared to be a hand gun," (3) as Officer No. 1 began talking to the petitioner, Collins had a panicked look on his face, "locked eyes with his friend, and did not respond," (4) as Officer No. 1 attempted to detain the petitioner, Collins "clenched his fist

- 11 -

and stiffened his body," and "started toward the door of the gas station," (4) while continuing in motion attempting to exit the store, the petitioner "reached toward the gun side of Officer No. 2's utility belt," "continued his efforts to get out of the gas station," and "push[ed] away from Officer No. 1 and Officer No. 2 as the group spilled out of the gas station," and (5) as the melee spilled out of the store, the officers then saw Collins "reach his right hand into his waistband to retrieve a firearm he was carrying and move it forward . . . point[ing] [the weapon] toward Officer No. 1's knee or ankle." None of those factual conclusions are undercut in any way by the petitioner's insistence that he was "not smoking" when officers first approached the scene. And, as discussed further below, Collins's sworn admissions at the guilty plea hearing flatly contradict the proffered affidavit testimony that "nobody had a gun" at the scene.

First, the entire line of argument that officers at the scene did not have "reasonable suspicion" to approach the petitioner and his companions in a store premises open to the public runs afoul of the well settled rule that officers do not need any "suspicion" at all to justify merely approaching and making inquiry of persons in a public place. As this Court previously has held, "[t]he contention that there may not have been any criminal activity in progress is immaterial to the legality of the investigative stop because, contrary to the defendant's position, police are not required to have reasonable suspicion of a crime in order merely to approach a citizen in a public place." *Lee v. United States*, No. 18-20198, 2024 WL 1526616, at *7 (E.D. Mich. Apr. 8, 2024). "As the Supreme Court has explained, 'a seizure does not occur simply because a police officer approaches an individual and asks a few questions.'" *Ibid.* (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "The Court explained that, so long as a reasonable person would feel free 'to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Ibid.* (quoting *Bostick*, *supra.*; *California v. Hodari D.*, 499 U.S. 621, 628

(1991)) (cleaned up). "This well-established jurisprudence derives from *Terry v. Ohio*, 392 U.S. 1 (1968), where the Court explained that not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Ibid.* (quoting 392 U.S. at 19 n.16) (cleaned up).

Second, the petitioner has not cited any legal authority undercutting the conclusion that all of the other undisputed circumstances observed by officers during their approach amply sufficed to justify their efforts to intervene physically and attempt to execute a temporary detention and supplied — or would have supplied — sufficient justification for a patdown search of the petitioner's person to dispel a reasonable suspicion that he was armed. The cases relied upon by Judge Cohn hold that flight from and initial resistance to officers upon approach, particularly in connection with the observation of a suspected weapon concealed on a suspect's person, suffice to create reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010) ("[T]he officers were justified in making an investigatory *Terry* stop because the officers had a reasonable suspicion of criminal activity under the totality of the circumstances, which included . . . Smith's efforts, with his head down, to push past the officers and exit the building as the officers entered."); *United States v. Russ*, 508 F. App'x 377, 382 (6th Cir. 2012) ("[I]t is sufficient to conclude, as the district court did, that once Boldin saw what he recognized to be a firearm in Russ's waistband, the totality of the circumstances at that point—including Russ's demeanor, his response when asked if everything was okay, his physical contact with and flight from Boldin — provided reasonable suspicion to justify an investigative detention.").

Reasonable suspicion was not required for the officers' initial approach in a public setting, and the other uncontested facts that came out at the suppression hearing establish that upon drawing near, the officers immediately observed sufficiently suspicious behavior to justify a *Terry* stop. Under those undisputed circumstances, the purported factual dispute about whether anyone at the scene was "not smoking" does not give rise to any substantial Fourth Amendment question.

As to Collins's proffered testimonial evidence from another witness at the scene to the effect that "nobody had a gun," the claim cannot survive the petitioner's frank admissions during the plea colloquy that in fact he did possess a gun, and that he knew that he was barred from possessing a weapon due to his prior felony conviction:

>THE COURT: Tell me briefly, as you recall, what happened?
>
>THE DEFENDANT: I was in possession of a firearm at the date of the offense.
>
>THE COURT: You were at a gas station, right?
>
>THE DEFENDANT: Yes, Your Honor.
>
>THE COURT: So a policeman came in?
>
>THE DEFENDANT: Correct.
>
>* * *
>
>THE COURT: And you had a hassle with him?
>
>THE DEFENDANT: That's correct, Your Honor.
>
>THE COURT: And you ran out of the station, or tried to, and they caught you?
>
>THE DEFENDANT: Correct.
>
>THE COURT: And you had a gun?
>
>THE DEFENDANT: Correct.
>
>* * *
>
>THE COURT: And you had a prior felony?

- 14 -

>THE DEFENDANT: That's correct.
>
>* * *
>
>THE COURT: Okay. You had a prior felony conviction?
>
>THE DEFENDANT: Yes.
>
>THE COURT: And, because of it, you weren't supposed to have a gun?
>
>THE DEFENDANT: Yes, Your Honor.

Plea Hr'g, ECF No. 82, PageID.406-07. The petitioner's "[s]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). The petitioner cannot surmount that "formidable barrier" merely by proffering contrary testimony purporting to contradict his own sworn admissions. *United States v. Espinosa*, No. 20-50787, 2021 WL 4898723, at *3 (5th Cir. Oct. 20, 2021) ("To conclude that the factual basis supporting Espinosa's guilty plea is deficient would undermine the longstanding tradition of holding defendants to their sworn testimony. Espinosa admitted in his plea agreement that he conspired with others to distribute and possess with intent to distribute fifty grams or more of actual methamphetamine. He then reaffirmed this admission under oath at a hearing. . . . This Court generally will not allow a defendant to contradict his testimony given under oath at a plea hearing.") (cleaned up); *see also United States v. Hutto*, 198 F. App'x 715, 718 (10th Cir. 2006) ("Appellant makes no mention of any of his admissions in his briefs on appeal, so he has not really challenged the district court's reasoning at all. He did not provide an affidavit to establish his new assertions that his counsel coerced him to plead guilty because counsel was unprepared for trial and because the government was threatening additional charges. Indeed, even if he had provided such an affidavit, it would contradict the admissions he made under oath at his change of plea hearing. In short, appellant's arguments on appeal are unsupported by any facts.").

All of the petitioner's arguments that his attorney failed to present additional evidence or to argue persuasively for suppression are foreclosed by the fact that he has failed to identify any sound legal grounds for a challenge to the suppression ruling. And it is well settled that the failure to file a meritless motion or to raise a groundless objection does not constitute deficient performance. *Jalowiec*, 657 F.3d at 321-22 (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson*, 498 F.3d 491, 514-15); *see also Knowles*, 556 U.S. at 123 (noting that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

### 3. High-Capacity Magazine Enhancement (Ground 5)

In his fifth ground for relief, Collins argues that his trial lawyer was ineffective when he failed to object to application of a sentencing enhancement based on the presence of a high-capacity magazine (holding more than 15 rounds) in the weapon that was seized. The enhancement under USSG § 2K1.1 applies when the weapon involved is a "semiautomatic firearm that is capable of accepting a large capacity magazine." *United States v. Louchart*, No. 08-20133, 2016 WL 4089131, at *2 (E.D. Mich. Aug. 2, 2016) ("The high capacity enhancement applies when 'the offense involves a semiautomatic firearm that is capable of accepting a large capacity magazine.' U.S.S.G. § 2K2.1(a)(4)(B). . . . Application Note 2 to § 2K2.1 defines a firearm with a large capacity magazine as one which could accept more than 15 rounds of ammunition. These qualifying handguns support the sentencing enhancement."). As the government points out, the petitioner did not dispute the factual finding in the presentence report that the weapon had a 16-round magazine and also had one round loaded in the firing chamber. Instead, he merely asserted at sentencing that the pistol had a "standard magazine" and that "any pistol or firearm is capable of accepting" a high-capacity magazine. Sent. Tr., ECF No. 60, PageID.303. The petitioner asserts

that application of the high-capacity magazine enhancement is undercut by the fact that there are "no pictures" in the record showing the weapon or revealing its magazine capacity. But he has proffered no substantial evidentiary basis calling into question the finding by Judge Cohn that the enhancement was justified based on undisputed information demonstrating the weapon's capacity. This claim, therefore, is not supported by any substantial factual basis.

### 4. Appellate Counsel (Ground 7)

In his seventh ground for relief, Collins argues that his appellate lawyer was ineffective when he failed to raise issues on appeal relating to the high-capacity magazine enhancement, alleged *Brady* violations by the government, and challenge the application of an "official victim" sentencing enhancement based on Collins's assault against one of the arresting officers.

First, the claim relating to the high-capacity magazine enhancement is groundless for the reasons discussed above — because the petitioner has not established a factual basis to show that he had any valid objection to application of the sentencing enhancement.

Second, as to the alleged *Brady* violation, the petitioner has not established a sufficient factual basis to show either that any material exculpatory evidence was withheld by the government, or that the police acted in bad faith by failing to collect and preserve any evidence that may have been useful potentially to the defense.

In the usual case, "[t]o succeed on a *Brady* claim a habeas petitioner must show that (1) the withheld evidence was favorable to the petitioner, (2) the evidence was suppressed by the government, and (3) the petitioner suffered prejudice." *Jefferson v. United States*, 730 F.3d 537, 550 (6th Cir. 2013). Here, the government insists that the Detroit Police Department never collected and the government never possessed and therefore could not have disclosed any surveillance video. The petitioner has not put forth any evidence to rebut those assertions, and "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover

information which it does not possess." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

"A 'different result' follows, however, when dealing with the failure [by investigators] 'to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Hudson v. Berghuis,* 174 F. App'x 948, 953 (6th Cir. 2006) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)). "Where evidence is not material exculpatory evidence, but merely potentially useful to a defendant, a due process violation occurs only where the evidence was destroyed in bad faith." *United States v. Coots*, 408 F. App'x 968, 973 (6th Cir. 2011) (citing *Youngblood*, 488 U.S. at 57-58).

Collins insists that video evidence, if it had been collected, would have bolstered Weatherby's affidavit testimony that "nobody was smoking" and "nobody had a gun" during the gas station encounter. Video proof that "nobody was smoking" at the scene would be of tangential relevance at best and immaterial in the final analysis to the resolution of any Fourth Amendment issues, for the reasons discussed above. And any such proof would have no bearing at all on the petitioner's guilt, since the petitioner was convicted of possessing a firearm, not of smoking illegally. His assertion that a video record would show that "nobody had a gun" is undercut strongly by the petitioner's contrary admissions under oath at the plea hearing. There is, therefore, no reliable factual basis in the record to infer that any such video evidence, if it had been found and viewed, would have been helpful to the defense. "The prejudice analysis under *Brady* evaluates the materiality of the evidence." *Jefferson*, 730 F.3d at 550. The petitioner cannot demonstrate that he was prejudiced, because there is no basis in the record for a finding that any supposed video evidence was material to a finding of guilt, and there also is no support for a conclusion that any such video would have been "helpful" for the defense.

Finally, the petitioner challenged the application of the "official victim" enhancement, and the Sixth Circuit rejected his position on appeal when it affirmed the conviction and sentence, finding that the enhancement under U.S.S.G. § 3A1.2(c)(1) was supported by testimony elicited at the suppression hearing. *United States v. Collins*, No. 18-2177 (6th Cir. Jan. 7, 2020) (ECF No. 85, PageID.427) ("At some point, Collins grabbed at Spidell's duty belt in the direction of Spidell's service weapon. At another point, Collins pulled a gun from his own waistband. Barr saw the gun 'coming right at [Barr's] knee' and Collins then tried to shove the gun under an ice machine. Spidell was eventually able to bring Collins to the ground, and Barr placed his foot on the gun. The officers then continued to struggle with Collins until a third officer arrived, at which point the officers managed to secure the fully loaded gun and placed Collins in custody. Given this testimony, the district court did not clearly err in finding that Collins's conduct 'creat[ed] a substantial risk of serious bodily injury' to the officers. U.S.S.G. § 3A1.2(c)(1)."). The petitioner has not presented any developed argument explaining how his appellate counsel could have done a better job, and the straightforward rejection of the claim by the appellate court forecloses any conclusion that his appellate lawyer performed deficiently in raising the issue.

\* \* \* \* \*

Collins has shown neither deficient performance nor prejudice. His ineffective-assistance-of-counsel claims, therefore, fail.

### III. Conclusion

Except for some of the petitioner's claims of ineffective assistance of counsel, the arguments presented in this motion to vacate the sentence have been forfeited and do not warrant relief. The claims of ineffective assistance of trial and appellate counsel are without merit, and no hearing is required for that determination.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate his sentence (ECF No. 127) is **DENIED**.

It is further **ORDERED** that the motion for prompt disposition (ECF No. 143) is **DISMISSED as moot**.

                                                  s/David M. Lawson
                                                  DAVID M. LAWSON
                                                  United States District Judge

Dated: July 23, 2024